THE TOWNSHIP OF BELLEVILLE, in the county of Essex,

*v.*

THE CITY OF ORANGE et al.

[Decided November 13th, 1905.]

1. A township not charged with duties relating to the public health and not suffering any injury to its property rights cannot enjoin a public nuisance on the ground of breach of contract, unless the legislature has authorized the township to make a contract for that purpose, such power to protect public rights being vested in the attorney-general.

2. Where a township contracted with a city without legislative authority, that the city as a part of the construction of a sewer to tide-water through the streets of the township, should maintain in another municipality a tidal collection chamber, to be operated in a certain manner, the township did not thereby acquire the right to compel specific performance of that portion of the contract regulating the use of such chamber for the sole purpose of the protection of the common public rights against public nuisances.

On demurrer to bill.

*Mr. William A. Lord, Mr. Edwin B. Goodell* and *Mr. Charles H. Halfpenny,* for the demurrants.

*Mr. Egbert J. Tamblyn,* for the complainant.    (*Mr. Oliver H. Perry,* solicitor.)

EMERY, V. C.

The city of Orange, by the act of April 7th, 1890, entitled "An act to provide for drainage and sewerage in cities of this state" (*1 Gen. Stat. p. 622*), was authorized (section 4) to construct a sewer to tidewater, and for this purpose, if necessary, to lay its sewer through the streets of any other township or municipality,

"under such reasonable regulations, if any, as may be imposed by such township or municipality with respect to like work done therein by itself, and such street or highway shall be, as far as possible, restored to its original condition, at the proper cost of the city for whose benefit the work is done."

On April 29th, 1892, the city of Orange and the township of Belleville entered into a contract (annexed to the bill) by which the township consented to the construction through part of its territory by the city of Orange of a sewer to tidewater, the sewer, in the language of the recital, "to be an outlet for other sewers already constructed and in the course of construction within its (the city's) limits." The consent of the township was given upon certain terms and conditions, all of which, except two, related to the places in the streets where the sewer pipes were to be located, the protection of public travel during the construction, the restoration of the streets, and the payment of the expense of inspection of the construction. These terms and conditions were all regulations of a character which might be imposed by the township with respect to the construction of its own sewers. Another of these "terms and conditions" related to the location of the outlet at tidewater, and the fourth, the only one now in question, was as follows:

"*Fourth.* A tidal chamber shall be constructed in connection with said sewer, into which all the sewage shall be carried. Said tidal chamber shall be air tight and water tight and shall be emptied only during the first two hours of the ebb tide."

The city of Orange expressly agreed to observe and fulfill the terms and conditions. The sewer was constructed according to the agreement, the outlet being within the boundaries of the city of Newark, and a tidal chamber, also within the city of Newark, was constructed in connection with it, and, as the bill alleges, for a considerable period after the agreement the sewage was collected in the tidal chamber and discharged within the hours specified in the agreement. The city of Orange, as the bill further alleges, subsequent to the construction of the outlet, allowed other municipalities, the townships of Bloomfield and Montclair, to discharge sewage into the outlet sewer, by reason of which the sewer is overcharged, and the tidal chamber is inadequate to hold the sewage for the term required by the agreement. The agreement with Montclair for the use of the sewer was made before the contract, and the agreement with Bloomfield in the following year, 1895. Both of these agreements were

made under the authority of a previous act of March 26th, 1890, entitled "An act to provide for drainage and sewerage in townships." *3 Gen. Stat. p. 3649*. The bill charges that for more than a year past the sewage has been allowed to pass through the tidal chamber into the river at all hours of the day and night; that the city of Orange refuses to collect and discharge it according to the agreement. By reason of this breach of the agreement the sewage discharged into the Passaic river accumulates at the mouth of the sewer and is carried by the tide up the Passaic river,

"to and along the property of complainant and the citizens of the township of Belleville, to the injury and damage of the property of your orator and the citizens of the said township of Belleville, and that the same is a menace to the health of the said citizens and inhabitants of the said township of Belleville."

Injunction is sought compelling the specific performance of this article of the agreement, and defendant demurs to the bill for want of equity.

The bill is not filed for the protection from an alleged nuisance of property owned by complainant, and the ownership of any property entitled to such protection is not alleged by the bill. As mere riparian owners of property situate on tidewater it is doubtful, under the decision in *Marcus Sayre Co.* v. *Newark, 60 N. J. Eq. (15 Dick.) 361 (Court of Errors and Appeals, 1899)*, whether the township is entitled to such protection. Nor is the complainant charged by law with any such duties relating to the public health as to entitle it, independent of any contract, to file a bill for protection against a public nuisance common to all its citizens. The attorney-general alone has this right. *Newark Aqueduct Board* v. *Passaic, 45 N. J. Eq. (18 Stew.) 393, 401 (Chancellor McGill, 1899)*. The question in the case, therefore, is whether the township, having no property or public rights to be protected against the nuisance alleged, is entitled to the substantial relief of enjoining the alleged nuisance by a specific performance of the terms of the contract relating to the manner of the use of the sewer. This equitable remedy is usually given for the purpose of protecting rights of

a complainant, or, in case of public bodies, for the protection of public rights with which they are charged by law and relating to which there are contracts authorized by law. The township cannot, in my judgment, by a mere contract with another municipality, and in the absence of legislative authority, invest itself with the rights which belong to the attorney-general or other public authorities for the protection of public interests. Nor in the absence of like authority could the city of Orange, by contract, give such public rights against itself to the township. The statutory authority to make regulations as to laying the sewer through the territory of the township, such as might be imposed for laying its own sewers therein, did not, either expressly or by implication, authorize a contract relating to the use of the sewer in another municipality when constructed, on breach of which the township would be entitled, as representing the common public rights, to enjoin a violation of the contract for the sole reason that the violation resulted in a public nuisance. The remedy against the alleged public nuisance, if any remedy exists, is with the attorney-general, and the township cannot, in my judgment, acquire the right to enjoin a public nuisance on the ground of breach of contract unless the legislature has authorized the township to make a contract for that purpose.

It was claimed by defendant that this clause of the contract was *ultra vires,* but as the city had power under the act to construct the tidal chamber and to control its operation, an agreement relating to this operation, if made with a person or municipal authority who had property or public rights to protect, would not, I think, have been *ultra vires,* and not being necessarily *ultra vires,* it is possible that an action at law for nominal damages might be maintained in favor even of a contractee not having any property or public rights to protect. I do not pass on this question, for the equitable remedy of specific performance is given, not for the mere enforcement of contracts, but because specific performance is necessary to give complainant the full benefit of the property or other rights which he is entitled to receive by the contract.

The demurrer will be sustained.